

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

★ APR 1 1 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 15-CR-382 |
| – against – | Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(2) |
| Andre Mitchell, | |
| Defendant. | |



JACK B. WEINSTEIN, Senior United States District Judge:

**Appearances**

**For United States:**

Lauren H. Elbert
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-7577
lauren.elbert@usdoj.gov

Michael P. Robotti
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-7576
michael.robotti@usdoj.gov

**For Defendant:**

Cesar De Castro
7 World Trade Center
34th Floor
New York, NY 10007
646-200-6166
cdecastro@cdecastrolaw.com

i

## Table of Contents

I. Introduction ..................................................................................................................1
   A. Instant Offense..........................................................................................................1
   B. Arrest........................................................................................................................3
   C. Guilty Plea................................................................................................................3
   D. Sentencing Hearing...................................................................................................3
II. Offense Level, Category, and Sentencing Guidelines Range.......................................3
III. Law...............................................................................................................................4
IV. 18 U.S.C. § 3553(a) Considerations.............................................................................5
V. Sentence........................................................................................................................6
VI. Conclusion....................................................................................................................7

## I. Introduction

Defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin pursuant to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). *See* Guilty Plea Transcript, January 11, 2016, ECF No. 149 ("Pleading Tr."). He participated in a drug trafficking organization ("DTO") to distribute heroin in Queens, New York. There are 11 other defendants in the above-captioned case, five of whom have been sentenced and some of whom are currently awaiting trial or sentencing.

On March 22, 2017, he was sentenced to 90 months of incarceration, supervised release for four years, and a $100 special assessment. *See* Sentencing Hr'g Tr., Mar. 22, 2017 ("Sent. Hr'g").

### A. Instant Offense

Defendant is 30 years old. Presentence Investigation Report, Apr. 21, 2016 ("PSR") at 2. An investigation commenced by Homeland Security Investigation ("HSI") and other law enforcement agencies in 2013 revealed that Mr. Mitchell, together with Kamel Lambus, Stanley Fuller, Shavona Trappier, Shakeem Powell, Tyran Trotter, Sean Brabram, Scott Williams, Tyrone Thomas, Earl Davis, Michael Scott, and Henry Curry ("defendants"), was participating in

1

a street gang called Paper Chasing Goons. PSR at ¶ 3. Six of the 11 remaining defendants are awaiting trial or sentencing. The investigation revealed that the DTO maintained access to narcotics and firearms; some of its members distributed heroin to a network of drug traffickers who then sold it to customers. *Id.* at ¶¶ 3-4. Defendants sold heroin from several stash houses, and during the course of the investigation it was determined that a mobile telephone was used to distribute heroin to the DTO's customers. *Id.* at ¶¶ 4-5.

The investigation revealed that Mr. Mitchell sold heroin he received from Mr. Lambus, Mr. Fuller, or an intermediary on behalf of the DTO. *Id.* at ¶ 9. On March 4, 2015, an undercover law enforcement officer called defendant to purchase heroin. *Id.* at ¶ 10. They met in Queens, where defendant entered the officer's vehicle and sold the officer 30 glassine envelopes of heroin for $270. *Id.* On March 18, 2015, the officer called defendant again to buy heroin. *Id.* at ¶ 11. They met in the officer's car in Queens, where the officer purchased 100 glassine envelopes of heroin for $900. *Id.*

On May 6, 2015, defendant was arrested and convicted of Criminal Possession of a Controlled Substance in the 4th Degree in Queens County Supreme Court. *Id.* at ¶¶ 12, 39. At the time of his arrest, defendant possessed 43 glassine envelopes of heroin, four mobile telephones, 31 rounds of .45-caliber ammunition, and a bullet-proof vest. *Id.* The drug selling activity is the same course of conduct underlying the instant offense, but there is no evidence defendant possessed or used a firearm in the instant offense. *Id.*

Intercepted phone calls between DTO members revealed that defendant acted as a distributor. *Id.* at ¶ 13. On a May 15, 2015 call, Mr. Lambus told Mr. Curry that defendant had previously sold heroin for Mr. Curry but was taking some of Mr. Curry's customer. *Id.* Following defendant's arrest on May 6, 2015, Mr. Lambus made several calls to discuss the

arrest and subsequent search of defendant's residence, where defendant had been storing narcotics that he sold near his home. *Id.*

**B. Arrest**

Defendant was arrested by HSI agents on July 8, 2015. *Id.* at ¶ 8. He has remained incarcerated since that date. *Id.* at 1.

**C. Guilty Plea**

In January 2016, Mr. Mitchell pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(B); Pleading Tr. The offense carries a minimum term of imprisonment of five years and a maximum term of imprisonment of 40 years. 21 U.S.C. § 841(b)(1)(B). A special assessment of $100 is mandatory. 18 U.S.C. § 3013. The statutory provisions impose a mandatory term of supervised release of four years. 21 U.S.C. § 841(b)(1)(B). The Sentencing Guidelines ("Guidelines") range for a term of supervised release is four to five years. U.S.S.G. § 5D1.1(a)(1); U.S.S.G. § 5D1.2(a)(1); U.S.S.G. § 5D1.2(c).

**D. Sentencing Hearing**

The sentencing proceedings were videotaped to record courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal). No friend or relative appeared at the sentencing to support defendant.

**II. Offense Level, Category, and Sentencing Guidelines Range**

Defendant's base offense level is 30, with a criminal history category of VI. *See* PSR at ¶¶ 18, 28-40. The offense level was decreased by three points pursuant to U.S.S.G. § 3E.1.1(a)-(b) for defendant's acceptance of responsibility. *Id.* at ¶¶ 25-26. The total adjusted offense level

is 27. *Id.* at ¶ 27. The parties do not object to this calculation. *See* Sent. Hr'g. The Guidelines imprisonment range is 130 to 162 months. *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 77.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." (footnote omitted)).

**III. Law**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The court's written statement of reasons must be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis

4

for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (alteration in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is encouraged. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV. 18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Mr. Mitchell was born in 1987 in Queens, New York. PSR at ¶ 45. Because his mother abused crack cocaine, his parents separated in approximately 1990. *Id.* He was close to his father for the first three years of his life, but after the separation, his father grew apart from his son. *Id.* at ¶ 49. Mr. Mitchell was raised by his grandmother from 1990 until she died in 2002. *Id.* at ¶ 54. He resided with his father until 2004. Between 2004 and 2013, Mr. Mitchell lived in homeless shelters or with girlfriends, or was incarcerated. *Id.* His mother successfully completed a drug treatment program in 2007 and regained custody of her children, but Mr. Mitchell felt abandoned during his formative years because his parents could not care for him. *Id.* at ¶¶ 49, 54. He was defiant during his teenage years, and his behavior became worse when his brother was killed in 2004. *Id.* at ¶¶ 47, 49.

Mr. Mitchell has a 5-year old son from a previous relationship. *Id.* at ¶ 50. He maintains a good relationship with his son and the mother of his child. *Id.* He has been in a relationship

5

with his current girlfriend since 2012 and was residing with her and her two children prior to his arrest. *Id.* at ¶¶ 52-54.

He is in good health, with no history of serious physical or mental illness. *Id.* at ¶¶ 58-60. He began smoking marijuana when he was 14 years old. *Id.* at ¶ 62. At the height of his marijuana use, he smoked approximately an eighth of an ounce per day until his arrest for the current offense. From approximately 2012 to his arrest, he ingested a gram per week of Molly, a high purity MDMA powder. *Id.* He received substance abuse counseling in 2004 or 2005 while on probation, but did not successfully complete the program. *Id.* at ¶ 63.

Mr. Mitchell left school after completing the ninth grade. *Id.* at ¶ 67. He later entered a different high school as an ungraded special education student. *Id.* at ¶ 66. He eventually started a GED program, which he did not complete. *Id.* Prior to his arrest, he worked intermittently as a barber for approximately three years. *Id.* at ¶ 71. He sold narcotics to financially support himself. *Id.* at ¶ 70.

Defendant has had difficulty leading a law-abiding life. He has been convicted of multiple drug offenses. *Id.* at ¶¶ 28-39. In 2010, he abducted and restrained a 13-year old girl for the purposes of promoting prostitution. *Id.* at ¶ 37.

## V. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of the offense and the characteristics of the defendant, Mr. Mitchell is sentenced to 90 months of incarceration. *See* Sent. Hr'g. A $100 special assessment was imposed. 18 U.S.C. § 3013. No fine was imposed in light of the defendant's inability to pay one. *See* Sent. Hr'g; PSR at ¶ 75. Four years of supervised release was ordered. *See* Sent. Hr'g.

A forfeiture of $1,170 to the government was ordered, and 10% of his net wages will be garnished until the forfeiture amount has been paid. *See* Sent. Hr'g; PSR at ¶ 87.

General and specific deterrence are achieved by the sentence imposed. Mr. Mitchell pled guilty to a serious offense. He has expressed remorse for his conduct and understands the gravity of his actions. Once he has served his sentence, he will have reached an age at which recidivism is less likely. *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Drug Offenders* 3 (2016) (finding a close association between "[a] federal drug trafficking offender's age at time of release into the community . . . [and] likelihood of recidivism").

## VI. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 3, 2017
Brooklyn, New York

7